**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Case 3-18-cr-356-S |
| v. | § | |
| THOMAS D. SELGAS (1) | § | |
| MICHELLE L. SELGAS (2) | § | |
| JOHN GREEN (3) | § | |
| | § | |
| | § | |

**JOHN GREEN'S OBJECTIONS TO RESTRICTIONS ON HIS BOND ORDERED BY**
**MAGSITRATE COURT**

## INTRODUCTION

Now comes Defendant John Green ("Defendant" or "Green) and, pursuant to Rule 59(a)

of the Federal Rules of Criminal Procedure and Local Criminal Rule 59.1(a), objects to the

November 28, 2018 Order of the Magistrate Court for the Northern District of Texas, the

Honorable U.S. Magistrate Rebecca Rutherford presiding, denying Defendant's Supplement to

Bond Motion.  For the reasons set forth below, Defendant respectfully requests that the District

Court set aside the Magistrate Court's Order and modify the September 28, 2018 Order Setting

Conditions of Release to allow Green to possess a firearm and to allow him to live with family

members who also possess firearms.

## STATEMENT OF FACTS

Green, a resident of Rathdrum, Idaho, was charged in the Northern District of Texas,

Dallas Division, with conspiring with Thomas Selgas and Michelle Selgas to violate the tax laws.

In the Order Setting Conditions of Release of 09/28/18, Green was given several typical

conditions of his supervised release, including that he "avoid all contact, directly or indirectly,

with any person who is or may be a victim or witness in the investigation or prosecution,

including codefendants." (Order of 09/28/18, ¶ 7(g).)  That condition was the subject of motions before the Magistrate Judge, heard on October 31, 2018.[1]  Another condition, that Green "not possess a firearm, destructive device, or weapon," (*id.* at ¶ 7(k)), was also the subject of a motion before the Magistrate Judge on October 31st and is the subject of this Appeal.  The Magistrate correctly modified the first-stated provision and allowed the Defendants to continue working together, but after taking the request to remove the firearm restriction under advisement, decided not to allow Defendant Green to possess firearms.  Defendant's sole objection is to that ruling.

No evidence has been presented to the Court that would lead anyone to believe Defendant Green is a danger to anyone or that there is even a suspicion that he might misuse any firearm he lawfully possesses in accordance with the Second Amendment.

It is undisputed that Green is not a flight risk.  Even if convicted, it is possible that a restriction against him to use firearms might be unconstitutional.  (This issue is currently being heard in the Seventh Circuit. *See Hatfield v. Sessions*, 322 F. Supp. 3d 885 (S.D. Ill. 2018), *appeal filed* (7th Cir. June 26, 2018).)

In the issue at bar, unlike in *Hatfield*, *infra*, who argues, so far successfully, he stills has a constitutional right to a weapon, Defendant Green is not a convicted felon.  Green is  accused and he is presumed innocent.  After being indicted, Defendant Green was nevertheless elected to the Idaho legislative body which indicates his peers trust in Green's character in spite of his indictment. He is a trusted law abiding citizen. It is unlikely he would have been indicted in his home district.

Green's home is in a rural area of Idaho.  He lives with his wife, his 17-year-old daughter, his 90-year-old mother-in-law, and a cousin, who is a disabled priest.  In the

---

[1] A copy of the Transcript of the October 31, 2018 proceedings is filed herewith as <u>Exhibit A</u>.

wintertime, wild animals frequent the area around the home.  Because of the condition on the release Order, Green cannot currently house a weapon so as to adequately defend his home and family against dangerous wild animals.  This burden also falls on every member of his household. In addition to this, Green was also a law enforcement official for ten (10) years, and assisted in the incarceration of many dangerous people. He is not safe unarmed.

On October 31, 2018, Defendant filed a Supplement to Bond Motion through his attorney, Michael Minns, who wrote the Supplement by hand when counsel received, at the last minute, case law supporting Green's constitutional right to seek modification of the release Order to remove the firearm prohibition.  The Magistrate denied Defendant's Supplement to Bond Motion, after originally entertaining it and indicating her understanding of the increased wildlife danger in Idaho during the winter months.

## ARGUMENT

The Court should set aside the Magistrate Court's November 28, 2018 Order denying Defendant's Supplement to Bond Motion, and remove the firearm prohibition from the release Order. It has no legitimate bond function in this specific case.

"A district court has wide, but not unfettered, discretion in imposing terms and conditions of supervised release," *United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015) (per curiam), such that the appellate Court generally reviews contested release conditions for an abuse of discretion, *United States v. Bickart*, 825 F.3d 832 (7th Cir. 2016), and its "determination of the facts pertaining to dangerousness and its finding of the efficacy of bail conditions are reviewed for 'clear error,'" *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). *See United States v. Estes*, 458 F.2d 1076, 1076 (5th Cir. 1972) (reversing district court's decision to require a surety bond as condition of release and its denial of substitution of unsecured appearance bond

without providing reasons as to either decision).  A constitutional challenge, however, is a legal question the Court reviews de novo, and to which the Court owes no deference to the district court.  *United States v. Sandidge*, 863 F.3d 755 (7th Cir. 2017). In this instance, the District Court has not received the order. There is no evidence in either hearing on September 28, 2018 or October 31, 2018 that supports any limitation on Green's Second Amendment rights.

Magistrate Rutherford abused her discretion in imposing on Defendant the condition on his release that he not possess a firearm.  Further, the prohibition on possessing a firearm during the pretrial release period is a violation of Defendant's constitutional rights.

The statute governing pretrial release condition states, in pertinent part:

(c) Release on conditions.—(1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

(A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a); and

(B) subject to the *least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community*, which may include the condition that the person—

… (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon.…

18 U.S.C. § 3142(c)(1)(A), (B)(viii) (emphasis added).  The Order Setting Conditions of Release is a form that follows the language of § 3142 and mirrors the potentially applicable conditions listed in § 3142(c)(1)(B).  The conditions imposed on Defendant were made applicable to him by checkmarks in several places on the form, including ¶ 7(k), prohibiting him from possessing

firearms or other weapons.  This form condition is totally unrelated to any fact that would be relevant to Green.

Imposition of this condition violates § 3142 because it is not the "least restrictive further condition" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id.*  While it might be commonplace for felony defendants to be prohibited from possessing firearms prior to trial, the courts have recognized that checking a box on a form simply because it is common to do so, without any analysis whatsoever as to the charged crime, the defendant's personality and history, and other circumstances, is an abuse of discretion.  Such a mechanistic imposition of release conditions certainly does not comply with the statutory mandate that any conditions imposed be the least restrictive to assure appearance and safety.  *United States v. Ortega-Hernandez*, 804 F.3d 447 (D.C. Cir. 2015) (remanding where judge erroneously checked the wrong box on pre-printed form listing generally applicable conditions of supervised release).  *Accord United States v. Tumea*, 810 F.3d 563, 567 (8th Cir. 2016) (modifying release conditions "to avoid a 'greater deprivation of liberty than is reasonably necessary,'" to allow with prior approval of the probation office possession of otherwise-prohibited everyday items that could be used as weapons); *Duke*, 788 F.3d at 398 (vacating two lifetime bans imposed on defendant as special conditions of supervised release).  Magistrate Rutherford herself recognized at the October 31st hearing that with regard to some of the conditions "the form was not satisfactory with respect to the nuances of this situation."  (Tr. 10/31/18, at 28.) In fact, from the very limited discussion during the proceedings, the only apparent thought of the Court and the Government was whether or not to limit the type and/or quantity of weapons Green would have access to.

An excerpt from the October 31st hearing is as follows:

"Mr. Kemins (Government): And I guess I don't know what weapons Mr. Green had in his house, but if he has a preferred bear protection rifle, maybe they can inform us of that and we could just make --
The Court: Perhaps, as long as it's not, you know, something that would also -- there are -
Mr. Kemins: Well, yeah, I don't know if --
The Court: I don't want to get into that.
Mr. Kemins: I don't know if he needs and M16 machine gun[2] for a bear, but, you know,
The Court: I'm sure it would do the trick, but there's probably something else that would work." (Tr. 10/31/18, at 31-32.)

In *United States v. Taylor*, 289 F. Supp. 3d 55 (D.D.C. 2018), the court emphasized on the defendant's motion that application of § 3142 "necessarily requires case-by-case consideration," *id.* at 69, and it pointed out that there was no evidence that Taylor had engaged in any act of violence, *id.* The evidence there included "multiple guns and large quantity of ammunition found in Taylor's home," which gave the court concern—but there was no evidence that he had control or dominion over the items. *Id.* at 72. Consideration of the nature and circumstances of the charged offense, the defendant's history and characteristics including whether he had a propensity for violence, and the nature and seriousness of the danger to the community or another person that would be posed by the defendant's release compelled the conclusion that he should not be detained. *Id.* And in *United States v. Say*, 233 F. Supp. 2d 221 (D. Mass. 2002), the court concluded that absent a crime of violence or a prior felony conviction the government did not show a substantial risk of harm to another. *Id.* at 226. "[W]hile there may be some risk that a person in possession of a firearm might use that firearm to commit an offense, where that person has no prior felony convictions, that risk cannot be deemed substantial." *Id.* The court also declined to impose restrictions "as a preventive measure in order to protect the public from a perceived risk" that the defendant might harm another. *Id.*

---

[2] The "M16" appeared to be a metaphor for "assault weapons." Mr. Green does not own a M16.

Similarly, consideration of the applicable § 3142 factors here demonstrates that the Magistrate Judge did not impose the least restrictive conditions to assure Green's continuing appearance and the safety of his community.  In fact, the order makes his family community less safe. The Magistrate analyzed no factors relating to the charges against Green, the circumstances, his characteristics, or his history.  Rather, the Court punished Defendant for what it viewed as a procedural misstep—failing to raise the issue at his original detention hearing.  (Order of 11/28/18, at 2.)[3]  The Court's only reason for imposing the firearms prohibition was that because Green is subject to unannounced visits by Pretrial Services officers, the prohibition was "necessary to reasonably assure the safety of those Pretrial Services officers." (*Id.* at 3.)  There is no finding of fact or reason of record to support this conclusion.  The issue was not raised at the original detention hearing or the October 31st hearing. There are no facts or even allegations supporting it.

While considering the release condition question of whether the Co-Defendants could meet without an attorney present, the Magistrate Judge stated the proper standard for imposition of release conditions:  that "the conditions of release [not] have these unintended consequences that [are] not really related to showing up and keeping the community safe."  (Tr. 10/31/18, at 19–20.)  As noted, the Magistrate decided that issue correctly.  However, when it came to determining the firearms restriction, the Magistrate Judge did not apply this standard.  Had the Magistrate Court analyzed the appropriate factors, it would have weighed the facts that Green has been charged with a crime that is *not* a crime of violence; he is not a convicted felon; and he has no history of violence.  Further, his characteristics are that of a calm, law-abiding,

---

[3]  The original detention hearing was managed by one lawyer who represented all three Co-Defendants.  The October 31st hearing was Defendant Green's first opportunity to be represented by un-conflicted counsel. But in neither hearing did Magistrate Rutherford review factual reasons or evidence to support the firearms restriction issue.

professional, a former police officer and currently an officer of the court.  There is no history of mental illness, violence, crimes, or other concerns about his character that would suggest a danger to the community.  The opposite is true.  He has a history of unblemished high character. Magistrate Rutherford certainly had no grounds whatsoever to suggest that if Green were visited by Pretrial Services Officers he would use a firearm offensively against them!   There is no evidence of any possibility, much less a substantial risk, of such violence.  In sum, the imposition of the firearms prohibition  was not the least restrictive measure necessary to ensure the safety of Green's community and other people around him.  It was an abuse of discretion and must be reversed.

Furthermore, the prohibition against Defendant possessing a firearm during the pretrial period of release violates his constitutional rights to both Due Process and under the Second Amendment.

The conclusion of *United States v. Arzberger*, 592 F. Supp. 2d 590 (S.D.N.Y. 2008), is on point, and supports a reversal of the Magistrate's Order.  The court determined that prohibiting the defendant as a condition of pretrial release from possessing a firearm violated his constitutional rights.  In *Arzberger*, the court reviewed the Supreme Court's interpretation and characterization of the Second Amendment, recognizing the about-face in *District of Columbia v. Heller,* 554 U.S. 570 (2008).

> There [in *District of Columbia v. Heller*], the Court stated that "[t]here seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."  It interpreted *Miller* as holding "only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns."[4]  The Court did acknowledge that "the right secured by the Second Amendment is not unlimited" and noted that

---

[4] Green does not possess any illegal weapons or weapons generally characterized as "assault weapons."

> nothing in our opinion should be taken to cast doubt on longstanding
> prohibitions on the possession of firearms by felons and the mentally ill,
> or laws forbidding the carrying of firearms in sensitive places such as
> schools and government buildings, or laws imposing conditions and
> qualifications on the commercial sale of arms.

*Id.* at 602 (citations omitted). The *Arzberger* court concluded that the Second Amendment's establishment of an individual's right to possess a firearm unrelated to any military purpose was, necessarily, a protectable liberty interest. Noting that the privilege of possessing firearms "may be withdrawn from some groups of persons such as convicted felons," it concluded that "there is no basis for categorically depriving persons who are merely accused of certain crimes of the right to legal possession of a firearm." *Id.*

The *Arzberger* court then applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). "The private interest at stake is paramount: the right to possess a firearm is constitutionally protected." *Id.* The remaining *Mathews* factors compelled the conclusion that prohibiting Arzberger from possessing a firearm in unanalyzed application of the release factors was a violation of due process.

> [T]here is a serious risk that, in the absence of an individualized determination, an
> accused person will wrongly be deprived of his Second Amendment rights.
> Indeed, the Government may well find it difficult to articulate a nexus between
> [the] accusation … and the need to prohibit possession of a firearm. Second,
> providing the defendant with an opportunity to be heard with respect to the
> appropriateness of this condition would reduce the potential error rate without
> creating a significant burden. And, finally, the Government's interest in ensuring
> the safety of the community would not be undermined by requiring an
> independent judicial determination of the danger caused by the defendant and the
> efficacy of the proposed bail condition.

*Id.* at 602-03. The *Arzberger* court concluded that the Walsh Amendments to the Bail Reform Act are unconstitutional, violating due process by requiring that an accused person be required to surrender his or her Second Amendment right to possess a firearm as a condition of release on

bail, without giving the person an opportunity to show that such a release condition is not reasonably necessary to secure the safety of the community in his or her particular case. *Id.* at 603 (denying government's application to impose as condition of bail that Arzberger not possess a firearm).

The court came to the same conclusion in *United States v. Kennedy*, 593 F. Supp. 2d 1221, 1230 (W.D. Wash. 2008), finding that the mandatory conditions of the Walsh Act as applied to the defendant violated the Due Process Clause of the Fifth Amendment "by mandating the imposition of certain burdensome pretrial release conditions in the final undesignated paragraph of 18 U.S.C. § 3142(c)(1)(B)." Such a "one size fits all" application of mandatory conditions violated the defendant's right to procedural due process under the Fifth Amendment, given that the conditions did not take into consideration personal characteristics or the circumstances of the charges, and were imposed without determination of whether such conditions were needed to assure the defendant's future appearance or avoid a danger to the community, and whether less-onerous release conditions could achieve the desired result. *Id.* at 1230.

The Court of Appeals for the Fifth Circuit has rejected a categorical approach in a similar situation, i.e., the ban on possession of a firearm by a convicted felon:

> [W]e reject the government's argument that the proscription of § 1202(a) (1) is absolute and admits of no self-defense exception. We hold today that where a convicted felon, reacting out of a reasonable fear for the life or safety of himself, in the actual, physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose or in the course of defending himself, he is not guilty of violating § 1202(a)(1).

*United States v. Panter*, 688 F.2d 268, 271–72 (5th Cir. 1982). Also addressing the prohibition on possessing firearms by certain convicted felons, the court reached a similar conclusion in the recent case of *Hatfield v. Sessions*. It concluded that the government failed to show it had a

strong public interest justification for prohibiting nonviolent felons who received no prison time from owning a gun for self-defense purposes, whereas Hatfield showed the prohibition violated his Second Amendment rights.  Hatfield had been convicted of the nonviolent felony of making a false statement.  He received no jail time for the conviction.  The government, reasoned the court, was required to demonstrate a justification for this narrow class of as-applied nonviolent felons who received no jail time.  This it could not do, as it had recommended no jail time at the time of sentencing but now insisted he was so dangerous to society he should not be allowed to possess a firearm for self-defense.  The court declared that the statute was "an unconstitutional violation of the Second Amendment as-applied to Larry Edward Hatfield:  a non-violent felon who received no prison time for his offense."  322 F. Supp. 3d at 896.

The same reasoning of these cases applies here.  The Magistrate Judge did not afford Defendant any opportunity to be heard on the firearms restriction issue.  (*See* Tr. 10/31/18, 29–32.)  There was discussion at the October 31st hearing about supplemental briefing, and obtaining input from the Government and the Pretrial Services officers, but no hearing or further briefing was allowed.  (*Id.*)  At the hearing, the parties discussed as a general matter the reasoning behind allowing Green to keep a firearm at his residence for defense against bears.  Defendant's attorney explained that the Pretrial Services supervising officer had no objection to Green maintaining a weapon for this purpose.  (*Id.* at 30–31.)  The Government's attorney expressed willingness to compromise by allowing Green to keep a weapon for self-defense.  (*Id.* at 30, 31.)  The deprivation of Defendant's Due Process right to a hearing, as well has the limitation on his Second Amendment right to bear arms, must be reviewed by this Court de novo; the evidence shows that the Magistrate Court's Order denying Defendant's Supplement to Bond Motion must be set aside.

Both because the Magistrate Court did not give Defendant a reasonable opportunity to be heard on the conditions of his release, and because it deprived Defendant of his constitutional right to possess a firearm, the prohibition on possessing firearms as a condition of Green's pretrial release violated both the Second Amendment and the Due Process Clause of the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, the Court should SET ASIDE the Order of the Magistrate Judge and MODIFY the Order Setting Conditions of Release, removing the prohibition on possessing firearms.

MINNS & ARNETT

*/s/ Michael Louis Minns*
Michael Louis Minns
State Bar No. 14184300
mike@minnslaw.com
Ashley Blair Arnett
State Bar No. 24064833
ashley@minnslaw.com
9119 S. Gessner, Suite 1
Houston, Texas 77074
Telephone: (713) 777-0772
Telecopy: (713) 777-0453

Attorneys for John Green

## CERTIFICATE OF SERVICE

This is to certify that on this the 11th day of December 2018, a true and correct copy of the above and foregoing instrument was served upon all counsel of record.

*/s/ Ashley Blair Arnett*
Ashley Blair Arnett