# EXHIBIT A



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

# Memorandum of Conversation

| Investigation #: | 1000214308 | Location: | Telephone Conversation |
|---|---|---|---|
| Investigation Name: | Thomas D Selgas | | |
| Date: | March 21, 2011 | | |
| Time: | | | |
| Participant(s): | Donald Gary, Witness | | |
| | Stephanie Byrd, Special Agent | | |
| | | | |
| | | | |

On the above date and time I called Donald Gary at phone number 509-838-6131. This is the phone number to Winston and Cashatt in Spokane, Washington. Gary's assistant Christie answered the phone and transferred the call the Gary. I spoke to Gary about the potential interview that we had set for March 24, 2011 at 9 a.m. Gary told me that he needed to talk to his partner at the law firm and would get back to me by the end of the day. Gary asked me what the interview would be about and I explained to him that I wanted to ask him some questions regarding the MyMail LTD tax return that he had prepared. He was concerned that he would be questioned about information that would have an attorney client priviledge. I asked him if he prepared the tax return as an attorney or a CPA and he stated that he prepared it as a tax return preparer. I told him that I was only going to question him about the tax return, who was involved, the information he was provided to prepare the tax return, who he spoke to and the individuals involved with the preparation of the tax return. He stated that he understood. He wanted to confer with his partner and he would get back to me by the end of the day.

I prepared this memorandum after refreshing my memory from notes made during and immediately after the conversation with Donald Gary.

Memorandum Author   *Stephanie Byrd* E

Memorandum   Page 1 of 2                                           U.S. Treasury Criminal Investigation

USA-033746

Stephanie Byrd
Special Agent

☑ Double click here to sign

Witness

Memorandum   Page 2 of 2                                                                 U.S. Treasury Criminal Investigation

USA-033747



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

# Memorandum of Interview

| Investigation #: | 1000214308 | Location: | Winston and Cashatt<br>601 W. Riverside<br>19th Floor<br>Spokane, Washington 99201 |
|---|---|---|---|
| Investigation Name: | Thomas D Selgas | | |
| Date: | March 24, 2011 | | |
| Time: | 10:02 a.m. to 11:26 a.m. | | |
| Participant(s): | Donald Gary, Witness | | |
| | Carl Heuber, Partner of Winston and Cashatt | | |
| | Stephanie Byrd, Special Agent | | |
| | Andrew Menck, Special Agent | | |

On the above date and time Special Agent Andrew Menck and I met with Donald Gary and Carl Hueber. We displayed our credentials for their inspection. Mr. Hueber provided me with a letter describing our agreement regarding this interview. I read the letter and explained to both gentlemen that if, at any point, they thought the answer to one of my questions would be attorney-client privilege then they could invoke that privilege at that time. I told them that I was going to leave that up to them and I was not going to exclude questions based on the fact that it might have an attorney-client privilege answer. They both agreed to continue the interview. Mr. Gary provided us with the following information:

1. Gary's full name is Donald J. Gary Jr. His office phone number is 509-838-6131. He has been employed by Winston and Cashatt since 2005 and his job title is attorney.
2. Gary learned about MyMail LTD when he met the managing partners at an unrelated conference in Washington D.C. in 2006. Specifically, he met Tom SELGAS and Bob Derby. The main focus of the conference in Washington D.C. was regarding the Murphy case. This case was a tax case and involved discrimination. Gary learned about this case from the attorney who defended the case.
3. Within 1-2 months after the conference in Washington D.C., the managing partners of MyMail LTD came to Gary and spoke to him about preparing a tax return for their business, MyMail LTD. Gary spoke to three different people regarding this tax return. One was John GREEN, who Gary knew to be the attorney for MyMail LTD, the second was Tom SELGAS, who was a managing partner of MyMail LTD and the third was Bob Derby, who was also a managing

Memorandum   Page 1 of 3                                        U.S. Treasury Criminal Investigation

USA-033758

partner of MyMail LTD. Gary understood from the conversations with each of the above listed people that he would be preparing an original tax return for MyMail LTD. He had no knowledge in the beginning that a 2005 Form 1065 had already been filed for MyMail LTD.
4. Gary was supplied the data via regular mail or e-mail. He did not keep the e-mails that were sent to him; he only kept the attachments with information regarding the preparation of the tax return. He did not remember who specifically provided the information or who he had conversations with or what the conversations were about.
5. Gary never prepared any other tax returns for GREEN, SELGAS, Derby or MyMail LTD.
6. Hueber stated that in 2007 or 2008 they had some computer problems and their system was corrupt. At that point, the law firm changed e-mail systems. Neither Gary nor Hueber believed there was any way to retrieve e-mails from 2006. Hueber stated that they had talked to Dave LNU, an IT person at the law firm, and he had not been able to retrieve any e-mails regarding MyMail or its partners.
7. Gary prepared the tax return based on the information he was provided, the Partnership Agreement and the distributions to the partners. Gary reviewed the partnership agreement and then he prepared the tax return.
8. Gary was told that he was actually preparing an amended 2005 Form 1065 for MyMail right before he mailed it off to be filed. When asked who notified him of this change he stated that he did not know. One of the first items Gary was provided with to begin the preparation of the tax return was a "working copy" of the tax return. Gary stated that he did not know who provided him with that "working copy." He believes he was told that the "working copy" had not been filed with the IRS. Gary stated that when he was notified that the return he prepared was to be an amended tax return, as an original had already been filed, he went into the tax return preparation software and checked the box that said "amended."
9. Gary stated that he has prepared tax returns prior to this one and that he has experience preparing amended tax returns. When I asked him if he usually prepared amended tax returns without ever seeing the original tax return, he stated that he did not know. When I continued to ask him questions about who he spoke to and what he was told about the original tax return, he told me he was not going to answer my questions. Hueber asked me if I was questioning Gary about whether he questioned himself internally; about what was morally right, or whether I was asking if Gary questioned his clients. I stated that I was asking about what Gary's clients told him about the original tax return and why they didn't tell him upfront that he was preparing an amended tax return.
10. At this point Gary and Hueber asked for a break so they could confer with each other. They walked out of the room to confer at approximately 10:30 a.m.
11. Hueber walked back into the room at 10:45 a.m. and said he was worried about the "tenor" of the conversation. He wanted to know if Gary was going to be a subject of the investigation. I told him that Gary is not considered a subject at this time. Hueber stated that Gary would not talk to me about any conversations he had with any of his clients. He would only discuss with me the preparation of the tax return and review the documents that were given to him by MyMail.
12. I told Hueber that that was not the agreement we made. I explained to Hueber

that I specifically told them over the phone that I wanted to talk about who gave them the documents to prepare the tax return, what information was given to him by the MyMail partners and any other information that pertained to the tax return in question. They agreed over the phone that they would tell me anything I wanted to know about the tax return. I also told Hueber that Gary told me over the phone that he prepared the tax return as a tax return preparer; not as an attorney. However, once I started asking questions about the conversations that Gary had with the MyMail partners regarding the preparation of the tax return, he decided he did not want to answer the questions. I told Hueber that I would contact the AUSA on the case and discuss the issue before we went any further with this interview.

13. At 10:50 a.m., Hueber took all of Gary's documents and left the room again. I called AUSA Steve Fahey for direction on this interview.
14. After a final conversation with Hueber we concluded that the interview should be terminated and we would collect the documents pursuant to the Grand Jury subpoena. Hueber stepped out of the room with SA Menck. Hueber began showing SA Menck the documents that would be provided pursuant to the Grand Jury subpoena. I then joined SA Menck and Hueber in the copy room where Hueber was explaining how the documents were numbered. Each document has a bate stamp on it and corresponds to the bate stamp on the copied documents. I compared the original documents to the copied documents and spot checked some of the numbers. The copied documents were a direct replica of the originals.

At this time we thanked Hueber for his time and asked him to thank Gary for his time and the interview was concluded.

I prepared this memorandum after refreshing my memory from notes made during and immediately after the interview with Gary.

Memorandum Author   *Stephanie Byrd* E

Stephanie Byrd
Special Agent

*Andrew Menck* E

Andrew Menck
Special Agent

USA-033760



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

# Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000214308 | **Location:** | United States Attorney's Office |
| **Investigation Name:** | Thomas D. Selgas | | Northern District of Texas |
| | | | 1100 Commerce St. |
| | | | 3rd Floor |
| | | | Dallas, TX 75242 |
| **Date:** | November 6, 2013 | | |
| **Time:** | 10:05 a.m. | | |
| **Participant(s):** | Donald Gary, Taxpayer | | |
| | Chuck Meadows, Attorney | | |
| | Michael Villa , Attorney | | |
| | Stephen Fahey, AUSA | | |
| | Robert Kemins, DOJ-Tax Attorney | | |
| | Stephanie Byrd, Special Agent | | |

On the above date and time, Special Agent Stephanie Byrd, AUSA Stephen Fahey, and DOJ-Tax Attorney Robert (Bob) Kemins interviewed Donald Gary (Gary) pursuant to a proffer agreement. Gary provided the following information during the interview:

1. Gary is originally from Baltimore. He moved to Louisiana and ended up in Post Falls, ID in 1999. He ran a law firm in Louisiana while living there.
2. Gary joined Winston and Cashett Law Firm in 2005 and prepares 50-60 tax returns a year. Gary works mostly on trust. His primary general practice is planning, transactional and non-litigation, not primary taxes.
3. Gary met JOHN GREEN (GREEN) in the early 2000's. They met socially, GREEN came over for dinner, and they had various conversations. Gary commented that GREEN sent his daughter to private catholic school starting in approximately 5th grade. At some point GREEN moved to Idaho.
4. In August 2006, US vs. Murphy 1 were handed down from the Supreme Court. Judge Ginsberg said a portion of the IRS Code was unconstitutional and not everything is income just because it is received. Attorney Kohn and Attorney Coppelents tried the Murphy 1 case. They are whistleblower attorneys.
5. September 20-24, 2006, Gary went to Washington D.C. On September 21, 2006, Gary met with THOMAS SELGAS (SELGAS), Robert Derby, and GREEN in Washington D.C. to discuss the outcome of Murphy 1. Murphy 1 was a case used when filing the 2005 tax return for MyMail.
6. On September 22, 2006, Gary had another meeting with some DC attorneys and SELGAS, GREEN and Derby to continue discussing the Murphy case. On September 24, 2006, Gary returned home. On September 26, 2006, Gary

began reviewing MyMail documents relating to a currency issue.
7. Gary does not recall having a conversation with anyone regarding MyMail until the meetings in Washington D.C. Gary also stated that he did not do any business with GREEN until after the meetings in D.C. Gary did not know SELGAS's history with the IRS prior to meeting him in D.C. Gary never discussed personal tax filings with SELGAS.
8. Gary stated MyMail hired him as an attorney and tax return preparer. The perception was that some of the "MyMail Partners" were thinking about currency issues for the 2005 tax return. Prior to MyMail Gary did not know anything about "currency issue." If you transact in Federal Reserve Notes (FNR) then Murphy is not applicable.
9. Gary did not use "currency issue" on his personal tax returns. Gary only met SELGAS 4-5 times. Two of those meetings were in D.C. Gary believes SLEGAS is brilliant. In 2008, Gary met SELGAS to discuss audit strategy. In 2009, Gary amended the 2006 MyMail Form 1065. Gary did that final thing for MyMail.
10. Gary stated he would not have taken MyMail as a client if not for the outcome of Murphy 1. MyMail provided Gary with an unsigned copy of the 1065 partnership tax return for 2005. Gary believed the tax return was a draft. Gary stated that he probably would not have filed the 2005 MyMail 1065 if he knew what he was preparing was an amended tax return. Gary did not remember how he felt when he found out the 2005 MyMail tax return he was preparing was and amended tax return.
11. Gary mailed amended K-1's to all the MyMail partners for tax year 2005.
12. Gary prepared the 2005 Form 1065 for MyMail and sent it to his client in Denton, Texas on Oct 13, 2006. Gary did not actually "file" the tax return. Gary expected that the tax return he prepared would be audited and he did research and pre-litigation in anticipation for the audit. The audit was about the original tax return. The IRS denied the currency adjustment and allowed the attorney fee expense.
13. Gary reviewed documents and amendments relating to the MyMail Partnership Agreement and complied all of the documents into one document. Gary communicated with SELGAS, GREEN, and Derby regarding the partnership agreement.
14. The 2006 MyMail Form 1065 was prepared in the same way as the 2005 Form 1065. Gary stated that you could not make adjustments in one year and take a different approach the next year. A decision had not been handed down on Murphy 2 when the 2006 MyMail tax return was prepared.
15. In March 2007, Gary mailed the 2006 MyMail Form 1065 tax return to MyMail. This return was prepared on the same basis as the 2005 MyMail tax return. Gary did not file the 2006 tax return for MyMail. Gary was asked to look at MyMail numbers for 2007 tax return. Gary believes Derby decided to go with Summers to prepare the 2007 MyMail tax return for that year.
16. Murphy 2 was argued in April 2007 and decided in July 2007. Ginsberg reversed Murphy 1 decision. After this decision, Gary told MyMail that all the 2005 tax returns should be amended.
17. Crumley vs. US decision was placed in the MyMail file in case of audit. In the Crumley case, Crumley paid his tax in coins and the IRS only gave him dollar

for dollar which supports income theory of three different standards.
18. SELGAS, GREEN, and Derby sent prepared 2005 "statements" to Gary. Gary reviewed the "statements: to make sure they were correct. The opinions in the "statements" were not Gary's he only checked the "statements" for facts. Gary did not make any changes to these "statements." They were sent to him at the very end, right before tax return needed to be filed. Gary sent full tax return including the "statements" to MyMail.
19. Gary does not agree with all positions in the "statements" and does not adopt the point of view of the clients, but he believes he can still defend them.
20. MyMail did not pay Gary in gold coins. SELGAS, GREEN, and Derby presented the "Dollar Theory."
21. Gary review documents he was shown and provided the following information regarding each document:
    a. MML 238- Gary prepared this schedule. Received numbers from the draft tax return and conversations with MyMail regarding numbers.
        i. Summers did not provide any records for 2005 tax return, but he did send records for 2006 tax return.
        ii. Gary prepared MyMail statement to partners.
    b. MML 50-Handwriting is Gary's
        i. WT=Wire transfer
        ii. PS=Partnership
    c. MML 40-Handwriting is Gary's
    d. MML 238-statement value rate
        i. 1st column-Last number
            1. Center number came from client
            2. 3 numbers up top were values at the time of deposit
            3. Middle number 9.32 was an average for the year.
        ii. Ordinary business income -$5.8M
        iii. Amended business income-$624,311
    e. MML 241-statement value-Number to appear on original K-1-face value of coins was $81,806.
    f. MML 45- Spreadsheet came from client
        i. Gary does not know how numbers on this document were calculated. This is Gary's handwriting, but he did not prepare this.
    g. MML 43- client gave to Gary
22. The last time Gary spoke to GREEN was a few weeks ago. Gary contacted GREEN to get the number to the best attorney in Texas. GREEN and Gary were at a BBQ together a few Sundays ago.
23. Gary purchased gold coins from Dillon Gage a few years after the MyMail currency issue.
24. Gary does not remember speaking to Dillon Gage, but believes he verified with them all the numbers he was given.
25. Gary wanted to give full disclosure to the IRS, right or wrong, it is all there. There was no question whether someone was trying to hide something in the tax return.
26. After Murphy 1 Gary believes that the government could not say the filing was frivolous, but after Murphy 2 Gary believes, it was easier for government to say the filing was frivolous.

27. Gary received an e-mail from SELGAS in the last month, which was response to an e-mail Gary sent him. Gary is not friends with SELGAS. Gary contacted GREEN and SELGAS regarding an attorney in Texas.
28. Gary cannot remember the last time he spoke to SELGAS. Gary attends the same church as GREEN.

I prepared this memorandum after refreshing my memory from notes made during and immediately after the interview with Donald Gary.

*Stephanie Byrd*
Stephanie Byrd
Special Agent