UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> THOMAS D. SELGAS (1) <br> MICHELLE L. SELGAS (2) <br> JOHN O. GREEN (3) | CRIMINAL NO. 3-18-CR-356-S |

GOVERNMENT'S BRIEF ON A DEFENSE WITNESS INVOKING THEIR RIGHTS UNDER THE FIFTH AMENDMENT OT THE UNITED STATES CONSTITUTION

The United States of America, by and through its undersigned attorneys, respectfully submits this memorandum in response to the motion of defendant John Green ("Green") seeking to introduce testimony of witness Don Gary "("Gary"). Green contends that Gary's prior statements to the Government preclude him from invoking his Fifth Amendment rights in connection with this trial. Alternatively, Green contends that the Court should order that Gary be given transactional or use immunity. For the reasons set out below, Green's arguments are meritless.

## I.   PROCEDURAL HISTORY

On July 18, 2018, a federal grand jury returned an indictment against Thomas Selgas, Michelle Selgas and John Green ("defendant Green") charging them with one count of violating 18 U.S.C. § 371, Conspiracy to Defraud the United States. Additionally, Thomas Selgas and Michelle Selgas were each charged with violating 26 U.S.C. § 7201, Tax Evasion. (Doc. 1).

At the beginning of trial counsel for defendant, Green informed the court that he had a witness under subpoena[1]. Counsel for the witness has informed both the defense and the government that if called to testify the witness will involve their right against self-incrimination in accordance with the Fifth Amendment to the United States Constitution.

On January 10, 2020, the defendant filed with the court a motion to compel the witness's testimony (Doc. 166).

## II.   DISCUSSION/ARGUMENT

Defendant Green argues because the witness was interviewed by the government on prior occasions that they have waived their ability to invoke their Fifth Amendment privilege. That is an incorrect recitation of the law.

Although it is well-settled that a witness *in a single proceeding* may not testify voluntarily about the subject matter at hand and then invoke his Fifth Amendment privilege against self-incrimination when questioned about the details, *Mitchell v. United States*, 526, U.S. 314, 321 (1999), it is equally settled that a waiver of the Fifth Amendment privilege "is limited to the particular proceeding in which the waiver occurs." *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir.1979); *see United States v. Fortin*, 685 F.2d 1297, 1299 (11th Cir.1982) (characterizing this rule as "hornbook law"); *United States v. Cain*, 544 F.2d 1113, 1117 (1st Cir.1976) (Clark, J.) (same). As the Fifth Circuit explained in *Poretto v. United States*, 196 F.2d 392, 394 (1952), "[t]he constitutional privilege attaches to the witness in each particular case in which he is called upon to testify, without reference to declarations at some other time or place or in some other proceeding."  This "single proceeding" rule serves to protect a witness against

---

[1] The witness is Don Gary he is an attorney who aided and assisted in the filing of an amended 2005 form 1065 for MyMail, Ltd. A tax return the government alleges is false.

changed circumstances-such as a change in the law or in the focus of inquiry-"creating new grounds for apprehension" that the witness may not have anticipated at the time of the first proceeding. *United States v. Miranti*, 253 F.2d 135, 140 (2d Cir.1959); *accord In re Morganroth*, 718 F.2d 161, 165 (6th Cir.1983); *In re Neff*, 206 F.2d 149, 152-153 (3d Cir.1953).

Accordingly, the Fifth Circuit and numerous other courts have recognized that a witness called to testify at a trial or other proceeding may properly invoke his Fifth Amendment privilege despite the fact that the witness had waived his Fifth Amendment privilege on an earlier occasion, through either a voluntary waiver or compulsion.  And this rule obtains even if the witness previously waived his rights in the very same case or investigation. *See United States v. Rivas-Macias*, 537 F.3d 1271, 1280-81 (10th Cir. 2008) (conspirator's guilty plea and prior statements to law enforcement did not preclude conspirator from invoking Fifth Amendment privilege at defendant's trial); *United States v. Wilcox,* 450 F.2d 1131, 1141-43 (5th Cir. 1971) (same); *United States v. Diecidue*, 603 F.2d 535, 552 (5th Cir. 1979) (witness's admission to Government prior to trial did not preclude witness from invoking Fifth Amendment rights as to that matter during trial); *United States v. Silverstein*, 732 F.2d 1338, 1347 (7th Cir. 1984) (Posner, J.) ("[T]he Fifth Amendment does not allow the government to force a man to adopt his unsworn out-of-court confession"; witness could properly invoke Fifth Amendment rights notwithstanding prior inculpatory statements made to government in same matter) (citing *United States v. Diecidue*).

As evidenced by Exhibit A to Green's motion the witness had three contacts with the government. The first in March 2011, which was an initial phone call between the special agent and the witness. This was not a substantive discussion of the facts of the case. The phone call

ended with the witness telling the special agent he had to make consultations and the witness would determine whether they would agree to meet.

The second meeting also in March 2011 took place at the witness's office. This meeting lasted a bit over an hour where some aspects of the preparation of the MyMail Ltd., amended form 1065 were discussed but the witness decided to terminate the interview.

The third interview took place in November 2013. This interview was conducted after the witness and their attorney executed a proffer agreement with the government (attached). Paragraph 8 of the proffer letter specifically informed the witness (in part): "This letter is not an immunity agreement, a plea agreement, or a cooperation agreement of any kind, nor is it a precursor to, or part of, such an agreement."

The terms of the proffer agreement are clear, simple, and direct. By its express terms, the proffer was a tool to assess the witness's truthfulness and to obtain information germane to the government's investigation. Reasonably construing the agreement, the government promised the witness, one benefit: his proffer statements would not be used against him "in the government's case-in-chief ... should a trial be held[2]." This is quite literally a limited benefit; the government did not promise derivative immunity, it did not promise that their statements would not be used in a grand jury presentation, nor did it promise the witness that he would not be charged or prosecuted related to the proffer statements. In fact, a fair reading of the proffer instructs that prosecution remained a possibility. *United States v. Hoffman*, 2014 WL 5040721[3] (E.D. Louisiana).

---

[2] Paragraph 3 of the proffer agreement.
[3] Unpublished opinion.

Given the foregoing, it is plain that Gary's proffer session with the Government – at which the Government promised that his statements could not be used directly against him -- does not translate into a waiver of his privilege against self-incrimination.

But even if Gary had waived his Fifth Amendment privilege earlier (through, for instance, a proffer where he had no promise that his statements would not be used), he could still invoke his Fifth Amendment rights if called by Green (or any other party) as a defense witness. The law is clear that "a person who waives his privilege as to the one trial [is not] estopped from asserting the privilege as to the same matter in a subsequent trial or proceeding." *Kirane v. City of* Lowell, 622 F. Supp.2d 262, 265 (D. Mass. 1985); *see also United States v. Licavoli*, 604 F.2d at 623 (voluntary testimony before grand jury did not preclude invocation of Fifth Amendment privilege at trial); 8 J. Wigmore, *Evidence* § 2276, at 470–72 (McNaughton rev. 1961) ("The waiver involved is limited to the particular proceeding in which the witness volunteers the testimony or the accused takes the stand"). Accordingly, Gary is plainly entitled to invoke his Fifth Amendment privilege if called as a witness at this trial, notwithstanding his earlier statements to law enforcement.

The cases cited by Green do not command a different result. Indeed, many of the cases cited by Green stand for the unremarkable proposition that where, unlike here, a witness at a particular trial chooses to testify, he may not invoke his Fifth Amendment rights *at that same trial* to preclude the opposing party from exploring the details of the testimony. *See, e.g.,* Green Memo, at 2 (citing *Mitchell v. United States*, 536 U.S. at 321). But Green fails to cite to any criminal case, let alone one in the Fifth Circuit, where a witness who made prior admissions to the Government was deemed, at a later trial or proceeding, to have forfeited the ability to invoke

his Fifth Amendment rights at a subsequent trial.  Such a failure is unsurprising because, contrary to Green's assertion (Memo, at 3), the law provides otherwise.[4]

In the alternative Green asks the court to order the government to offer the witness, "transactional immunity against the use of any of Gary's testimony in this case, or in the alternative, complete immunity."  In advancing this request, Green fails to cite to, let alone discuss, the governing law in this Circuit and elsewhere that precludes the relief he seeks. The Fifth Circuit has repeatedly held that "district courts have no inherent power to grant immunity." *United States v. Hager*, 879 F.3d 550, 556 (5th Cir. 2018).

Put simply, a district court may not grant immunity simply because a witness has essential exculpatory evidence unavailable from other sources. At most, this Court has left open the possibility that immunity may be necessary to stem government abuse." *Id.*  But the Fifth Circuit has cautioned that, "the exercise of this authority requires "extraordinary circumstances." *Id. See also United States v. Thevis*, 665 F.2d 616, 639-40 (5th Cir. 1982).

---

[4] Green suggests (Memo. At 3) that the "great weight of authority" on this point of law provides that a witness who makes statements in one setting should be deemed to have forfeited his ability to claim the Fifth Amendment privilege at a future proceeding.  But the cases he cites for that assertion to not support his contention.  For instance, Green claims that *United States v. Trihn*, 638 F. Supp.2d 143 (D. Mass. 2009), stands for the proposition that a witness who gives incriminating testimony during grand jury proceedings "may not later refuse to testify as to the details of the evidence" if the witness voluntarily testified notwithstanding the risk of incrimination.  Green Memo, at 2-3. But the *Trihn* case did not even involve whether the grand jury witness (who was the defendant) could invoke her Fifth Amendment rights at a later trail.  Instead, the holding in *Trihn* centered on whether the witness should be deemed to have waived her Fifth Amendment rights during her grand jury testimony.  Simply put, the *Trihn* case, unlike here, did not involve a witness who "refuses to testify" at a trial.  Likewise, the great weight of authority" to which the court referred in *Sears, Roebuck & Co. v. American Plumbing*, 19 F.R.D. 329 (E.D. Wis. 1954), was a reference to the rule that where a witness makes statements in the same proceeding, he should not be able to invoke his Fifth Amendment rights in that proceeding to preclude cross-examination.  Here, of course, the statements of the witness were made in earlier proceedings with the government (that is, the proffer) and not the same proceeding (that is, the trial).

A defendant has no federal constitutional right under the due process clause of the Fifth Amendment to defense witness immunity even though the testimony a defendant seeks to immunize is both exculpatory and unavailable from any other source. *United States v. Chagra*, 669 F.2d 241, 258 (5th Cir. 1982), *overruled on other grounds by Garrett v. United States*, 471 U.S. 773 (1985). The immunity decision requires a balancing of public and private interests which should be left to the executive branch. *Id.*

The government in the instant case declines to offer the witness immunity. This is not an abuse of executive branch authority. Under the government's theory, the witness participated in a conspiracy to defraud the United States and could still be charged.  Far from constituting any "abuse," a decision not to immunize such a witness is a proper exercise of prosecutorial discretion. *See United States v. Hager*, 879 F.3d at 556 (decision by government not to grant immunity to potentially culpable conspirator did not present "extraordinary circumstances" warranting court's grant of immunity).  In sum, Green's request for immunity should be rejected.

III.   CONCLUSION

For the above discussed reasons, the government requests the court deny defendant Green's motion to compel the witness's testimony.

          Respectfully Submitted,

          ERIN NEALY COX
          UNITED STATES ATTORNEY

          */s/ Robert A. Kemins*
By:   ROBERT A. KEMINS
      Massachusetts Bar No. 267330
      Trial Attorney
      U.S. Dept. of Justice, Tax Division
      717 N. Harwood, Ste. # 400
      Dallas, TX 75201
      (214) 880-9781
      Robert.A.Kemins@usdoj.gov

MARA A. STRIER
Florida Bar No. 644234
Trial Attorney
U.S. Dept. of Justice, Tax Division
150 M Street, NE
Mail Stop: 1.1505
Washington, DC 20002
(202) 514-5886
Mara.A.Strier@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 12, 2019, the foregoing document was filed using ECF, which will notify all counsel of record.

*/s/ Robert A. Kemins*
Robert A. Kemins
Trial Attorney
Tax Division, United States Department of Justice