UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | Criminal No. 18-CR-00356 |
| § | |
| JOHN O. GREEN § | |

### DEFENDANT'S MOTION FOR NON-GUIDELINE SENTENCE

Now comes Defendant John O. Green ("Green"), by and through his counsel of record, and respectfully requests the Court to consider the following information in determining his sentence.

### I. OVERVIEW

Green was found guilty of one count of Conspiracy to Defraud the United States based on actions that "impeded the government's ability to collect taxes" that were allegedly owed by his co-defendant, Thomas Selgas. The Pre-Sentence Report ("PSR") calculated a Total Offense Level of 22, which included a two-point enhancement under U.S.S.G. §3B1.3, use of a special skill. Green filed an objection to the imposition of that enhancement. With a Criminal History Category of I, the PSR recommended an advisory sentencing range of 41 to 51 months. Green submits that a sentence of probation, with home confinement and other restrictions imposed by this Court, would be reasonable and would meet the goals of the sentencing statute.

### II. SENTENCING LAW

The ultimate task facing this Court is to fashion a reasonable sentence based on the Sentencing Guidelines, the Section § 3553(a) factors, and the application of the Court's considerable discretion. *See Kimbrough v. United States*, 552 U.S. 85 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 48 (2007). While "the Guidelines should be the

starting point and the initial benchmark," they "are not the only consideration." *Id*. The district court must "consider all of the [18 U.S.C.] § 3553(a) factors" and "must make an individualized assessment based on the facts presented." *Id*. at 48-49. Further, pursuant to 18 U.S.C. § 3661, the Court is free to consider any "information concerning the background, character, and conduct of a person convicted of an offense . . . for the purpose of imposing an appropriate sentence." Finally, the Supreme Court has authorized district courts to vary from the Guidelines on policy grounds. *See Kimbrough*, 552 U.S. at 106-07. *See also Spears v. United States*, 555 U.S. 261, 264 (2009) (a Guideline may be rejected on a categorical basis "and not simply based on an individualized determination that [it] yield[s] an excessive sentence in a particular case.").

### III. GROUNDS FOR NON-GUIDELINE SENTENCE

**A. Section 3553(a) Factors**

Section 3553(a) requires sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2," which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider, among several factors, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the sentencing range established by the Guidelines.

**B. History and Characteristics of Green**

Section § 3553(a)(1) requires a sentencing court to consider the history and characteristics of the defendant. There are many factors in connection with Green's history and

personal characteristics that support a sentence at or below the bottom of the recommended sentencing range.

## 1. Personal History

Green was born in Brooklyn, New York on February 23, 1959. He has seven siblings and he maintains a close relationship with all of them. He married his wife, Elizabeth, in 1979 and their marriage remains intact. He and his wife have four adult children. Green graduated from high school in 1977. He continued his education and graduated from the University of Houston, where he earned a Bachelor of Science in Criminal Justice in 1982. Four years later, he earned his Doctor of Jurisprudence from South Texas College of Law. While attending law school, Green worked as a police officer in Houston, Texas. Until his conviction, he was licensed to practice law in Texas and Washington. Green is a certified peace officer and licensed law enforcement instructor. In November 2018, Green was elected to the Idaho House of Representatives. He has never been on the wrong side of the law.

## 2. Letters Supporting Green

Family members and friends have submitted numerous letters to the Court in support of Green.[1] These letters describe Green as "generous, unselfish, and kindhearted" and "a role model." The letters reference numerous instances where Green provided legal advice and services at no cost, as well as his service to the community as a member of the Idaho House of Representatives. These letters paint a picture of Green that is the complete opposite of what is reflected by the offense conduct. Green respectfully asks the Court to consider the contents of the letters when determining his sentence. Below is a brief summary of a few of the letters:

---

[1] The letters are attached as Exhibit A.

**John Green's Motion for Non-Guideline Sentence**                                        **Page 3 of 14**

Representative Vito Barbieri; begs for leniency because Green is "…a principled and honorable man."

The minister, Lawrence Blanchard calls him, "one of the best men I have ever known." Representative Chad Christensen, a former parole officer, says "Good men...can make poor choices, but still be good in their core [John] is a good man in his core."

Attorney Karen Connelly describes him as "…good man…courteous, kind, and respectful to all people.   He is not a risk to any person…he is a significant benefit."

Father Patrick Crane praises his admirable character.

His daughter Ms. Medley Green D'Eilia describes this "kind and honorable man" as teaching her right from wrong.

Marc and Elaine Eberlein discuss a man and his wife (the Greens) who stayed with them a week to help their family during two major surgeries.

Mr. Eberlein's praise is echoed by lawyers, ministers, doctors, family members, a court reporter, legislators, and community members he has selflessly served.   Over and over again his neighbors speak of the pro bono work he has done to serve his various communities.

Green and his wife have taken care of elderly family members in their home, two who live there today, Green's mother-in-law, Patricia Ernst (92) and his cousin a retired priest.

Alan and Mary White explain; "When John called us to let us know what happened he shed tears, but he had no anger.   Please send him back to our community as soon as you can. Many people count on him…"

## C.   Purposes of Sentencing – Section 3553(a)(2) Factors

Title 18 U.S.C. § 3553(a)(2)(A) - (D) instructs a sentencing court to consider the following "purposes of sentencing" when determining a sufficient sentence.

**1. Just Punishment/Promote Respect for the Law**

It must be stressed that Green has already suffered serious consequences as a result of his actions, and he will suffer additional collateral consequences in the future. To determine a just punishment, collateral consequences of a conviction should be taken into consideration. One such collateral consequence is that he now has the social stigma that goes with having a federal conviction, something that will remain with him for the rest of his life. Another significant collateral consequence is Green's loss of his license to practice law. Equally significant is the fact that Green was removed from his elected office in the Idaho House of Representatives and is now deprived his of his retirement.

Since *Booker*, many courts have concluded that similar significant collateral consequences justify a variance from the advisory guideline range. For instance, the Fourth Circuit upheld a thirty-six-month reduction on the basis of such factors as devotion to family and profession, loss of teaching certificate and state pension, potential for rehabilitation, and a low chance of recidivism. *See United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007). In *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009), the Second Circuit affirmed a downward variance from 78 to 97 months, to a sentence of 20 months, in part because the "conviction made it doubtful that the defendant could pursue his career as an academic or translator, and therefore the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant." In *United States v. Jaime*, 2017 WL 398314, at *3 (D. D.C. 2017), the D.C. Circuit approved a variance resulting in a one-year probationary sentence, based in part because of "the potentially devastating collateral consequences of a criminal conviction, including it being an impediment to future

employment."[2]  Green had already stopped doing tax work prior to his trial.   There is no chance of recidivism.

In *United States v. Warner*, U.S. District Court Northern District of Illinois, a citizen with secret offshore accounts and over a billion dollars in assets was given probation over the Government's objection, because of his generosity.   Green's generous heart and acts of kindness and self-sacrifice for his community have been substantial for his lifetime.

In *United States v. Dr. Ahuja*, U.S. District Court for the Eastern District of Wisconsin the Government requested 41 to 51 months in prison.   Dr. Ahuja was sentenced to three years of probation.   Dr. Ahuja was convicted of one count of willful failure to file an FBAR and one count of filing a false federal income tax return.   In both probated sentences the convicted citizen benefited from the alleged criminal conduct.   Green did not benefit.

Green's conviction has turned his world upside down.   He is no longer able to practice law in Washington.   He is unable to represent the people in the Idaho House of Representatives.  He is unable to hold many elected positions in the state.   He cannot return to a career in law

---

[2] Other District Courts have varied downward after considering the collateral consequences of a conviction.  *See e.g., United States v. Olis*, 2006 WL 2716048, at *13 (S.D. Tex. 2006) (court varied downward from range of 151 to 188 months, to a sentence of 72 months based on "the chastening effect of years in prison, the attendant negative publicity, the loss of his job and accounting and law licenses . . . ."); *United States v. Wachowiak*, 412 F. Supp.2d 958, 963-64 (E.D. Wis. 2006) (imposing below-guidelines range where defendant's "future career as a teacher was ruined" and "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction"); *United States v. Samaras*, 390 F. Supp.2d 805 (E.D. Wis. 2005) (below guideline sentence, in part, because "as a consequence of his conviction and sentence, defendant lost a good public sector job, a factor not supported by the guidelines"); *United States v. Ranum*, 353 F. Supp. 2d 984, 990-91 (E.D. Wis. 2005) (sentence below Guideline range in consideration of "history and character of defendant" where he lost his job at bank and "would not be able to work in banking again."); *United States v. Redemann*, 295 F. Supp. 2d 887, 895-97 (E.D. Wis. 2003) (downward departures based on collateral consequences were proper because, "[i]f the circumstances of the case reveal that the purposes of sentencing have been fully or partially fulfilled prior to the imposition of sentence, a sentence within the range set forth by the guidelines may be 'greater than necessary' to satisfy those purposes").

enforcement because of the conviction. The severe collateral consequences of Green's conviction represent a significant punishment that must be considered when determining his sentence and his age. A sentence of probation and house arrest would be reasonable and reflect the harsh punishment Green has already suffered.

Regarding a sentence of probation, the Supreme Court in *Gall v. United States*, 552 U.S. 38 (2007), recognized that while custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, a sentence of probation still amounts to punishment:

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual "special conditions" imposed by the court.

*Id*. at 48 (internal citations omitted).

As a result of this conviction Green now suffers the current loss and likely loss for the balance of his life, of his second amendment rights to bear arms. For some citizens this is not a serious punishment. However, this court, knows that for Green it is a substantial life changing punishment.

In light of the consequences that Green has already suffered, a sentence of probation would provide sufficient punishment and would be reasonable under the circumstances.

**2. Afford Adequate Deterrence to Criminal Conduct**

The mere fact of Green's prosecution and conviction will deter others from engaging in similar conduct.  An additional deterrence consideration is that fact that prison time is more significant to a first-time offender, a fact that makes a lesser sentence just as effective as a greater sentence.  For example, *United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006), involved a marijuana conspiracy with a total of 10 kilograms of marijuana.  While the defendant had prior criminal history and drug and alcohol addiction, he had never before been confined.  His advisory sentencing range, which did not include a gun or role-in-the-offense enhancement, was 10 to 14 months.  The court ultimately sentenced him to a non-guideline split sentence of two months in jail and four months home confinement.  The court found that this sentence was "sufficient to impress on him the seriousness of his crime and deter him from re-offending," as the defendant had never been confined before.  *Id.* at 965.  *See also United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Green's situation is similar to these cases.  He has a Criminal History Score of Zero (resulting in a criminal history category of I) and has never been confined or imprisoned.  Because he is a first-time offender, a sentence of probation has a much more significant impact, and therefore offers a greater deterrence.

### 3.   To Protect the Public From Further Crimes/Recidivism

Regarding the potential for recidivism, the Sentencing Commission's own studies show that Green's history and characteristics make his a low risk for recidivism.  This is particularly true for a defendant who, like Green, has zero criminal history points.  This fact is borne out by the Sentencing Commission's recent study: TRACEY KYCKELHAHN & TRISHIA COOPER, U.S.

SENTENCING COMM'N, THE PAST PREDICTS THE FUTURE: CRIMINAL HISTORY AND RECIDIVISM OF FEDERAL OFFENDERS (2017).[3] That study showed that the higher the CHC (a result of more prior crimes and/or more serious crimes), the higher the recidivism rate. *Id*. at 7. Further, a defendant with zero criminal history points fall at the lowest level of recidivism. *Id*.

A previous study by the Commission found that with zero criminal points, Green poses the lowest possible risk of recidivism, and presents the lowest possible need to protect the public. *See* UNITED STATES SENTENCING COMMISSION, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, at 5 (2005)[4] ("scoring at the minimum value of zero on the CHC indicates a very **low** recidivism risk.") (emphasis in original). Without a single criminal history point, Green presents only a little more than 10% risk of recidivism the first 24 months after release. By contrast, other offenders in the same criminal history category with one criminal history point have a recidivism rate twice that of Green's potential rate. *See* UNITED STATES SENTENCING COMMISSION, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 7 (2004).[5] A sentence which assumes a rough equivalence between Green's risk of recidivism and that of offenders with one criminal history point, does not adequately account for his extremely low risk of recidivism. The same report shows that Green, as a married, non-drug using, college graduate, falls in the lowest categories for recidivism. *Id*. at 29.[6]

---

[3] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf
[4] Available at: https://www.ussc.gov/research/research-publications/comparison-federal-sentencing-guidelines-criminal-history-category-and-us-parole-commission-salient
[5] Available at: https://www.ussc.gov/research/research-publications/measuring-recidivism-criminal-history-computation-federal-sentencing-guidelines. The relevant page is attached as Exhibit B.
[6] A copy of the relevant page is also attached as Exhibit C.

**John Green's Motion for Non-Guideline Sentence**                                                   **Page 9 of 14**

A follow-up report from the Commission further supports the fact that Green, as a first-time offender, is an extremely low risk for recidivism. Recidivism data analyzed by the Commission indicate that "first offenders" generally pose the lowest risk of recidivism. *See, e.g., U.S. Sentencing Comm'n, "Recidivism Among Federal Offenders: A Comprehensive Overview*," at 18 (2016).[7] Recognizing this lower risk, the Commission, on Aug 25, 2017, issued proposed amendments to the Guidelines, setting out a new Chapter Four guideline, at §4C1.1, that would provide lower guideline ranges for "first offenders" by reducing the calculated range by either one or two points. Although the amendments are only proposed, Green maintains that he does not pose a significant threat of re-offending or otherwise endangering the public; thus, he is deserving of a non-guideline sentence as a first-time offender.

## 4.   To Provide Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Green has a college education, a post-graduate J.D. degree, and has completed additional years of training related to law enforcement. From a practical standpoint, Green is not in need of any educational or vocational training offered by the Bureau of Prisons. His health condition is another matter. As set out in the PSR (¶¶ 60, 61), Green suffers from low thyroid, low testosterone, hypertension, and high blood pressure. He takes medication for all of these conditions. In 1995, he had his gall bladder removed and in 2018, he had coronary artery by-pass surgery.

John Green has serious risk factors for serious complications if he were to contract

---

[7] Available at: http://www.ussc.gov/research/research-publications/recidivism-among-federal-offenders-comprehensive-overview.

**John Green's Motion for Non-Guideline Sentence**                                                               Page 10 of 14

Covid-19 while incarcerated which would qualify him as a medically vulnerable prisoner. He suffers from coronary artery disease, hypertension, obesity and age. See attached Exhibit D. According to BOP.gov[8] as of November 24, 2020 there are confirmed active Covid-19 cases at 123 BOP facilities and 51 at Residential Reentry Management Centers. By November 17, 2020 at least 197,659 people in prison tested positive, an 8 percent increase from the previous week. There have been at least 1,454 deaths from coronavirus reported among prisons. [9] Attorney William Barr has issued orders to release medically vulnerable inmates or move them to home confinement. John Green is a non-violent first-time offender, given his medical issues and the threat of death from Covid-19 he should be sentenced to home confinement.

In addition, while incarceration is recommended by the PSR, the cost of incarceration is another factor that the Court may consider when determining a sentence. *See e.g., United States v. McFarlin*, 535 F.3d 808, 810-11 (8th Cir. 2008) (defendant convicted of conspiracy to distribute crack cocaine, with guideline range of 97 to 121 months, sentenced to home detention and probation for three years; court noted home detention is "equally efficient and less costly than incarceration" and that § 3553(a)(2)(D) allows courts to "consider the need for medical care when determining a sentence."); *United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 2004) (cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime); *United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993) (court noting that "the non-rehabilitation purposes of incarceration-retribution, deterrence and incapacitation would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and

---

[8] Available at https://www.bop.gov/coronavirus/
[9] https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons

receive very little in return.").

A sentence of probation with home confinement would adequately address Green's needs, as well as save the American taxpayers $3,121 per month (PSR ¶ 85), and the savings could "otherwise be spent on other law enforcement or social programs to reduce crime."

**D.   Conclusion – §3553 Factors**

Green asks the Court to take into consideration all of the information set out in this Memorandum in evaluating the sentencing factors under §3553.   Under the mandatory guidelines, a sentencing court was ordinarily required to find the existence of "extraordinary circumstances" before imposing a sentence outside of the then-mandatory guidelines range. Such a finding is no longer required as the Supreme Court held that a district court does not need to find "extraordinary" or "exceptional" circumstances to justify a non-Guidelines sentence.   *See Gall v. United States*, 552 U.S. 38, 47 (2007).   *See also United States v. Simmons*, 568 F.3d 564, 568 (5th Cir. 2009) (the requirement of "extraordinary circumstances" is no longer the law).

A sentence of probation with home confinement would be reasonable and, most important, would be sufficient, but not greater than necessary to meet the goals of sentencing.

**E.   Totality Of The Circumstances**

A lower sentence for Green is also supported by the combination of factors presented herein.   In *United States v. Jones*, 158 F.3d 492, 504-05 (10th Cir. 1998), the district court departed from a sentencing range of 12 to 18 months, to a sentence of six months home confinement and three years probation.   The departure was based on the totality of circumstances, including "collateral employment consequences, aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling."   *Id*. at 504.   *See also*

*United States v. Broderson*, 67 F.3d 452, 458 (2d Cir. 1995) (downward departure allowed where factors which individually would not warrant a departure were combined, and court concluded that this "confluence of circumstances" had not been taken into account by the Guidelines). *See also United States v. Coleman*, 188 F.3d 354, 362 (6th Cir. 1999) (recognizing the Guidelines explicitly acknowledge a lower sentence may be based on a combination or aggregation of factors under U.S.S.G. § 5K2.0).

The combination of factors presented in this Memorandum are appropriate for a sentence of probation and home confinement, based on the totality of the circumstances.

## V.  CONCLUSION

Green respectfully requests the Court to take into consideration the information provided herein when fashioning a sentence that meets the goals of sentencing under § 3553(a).  He further submits that the two-point enhancement under U.S.S.G. § 3B1.3 does not apply to the facts of his case.  He also requests a downward variance under *Booker* based on the collateral consequences of his conviction, and any further downward variance the Court determines to be reasonable to be sufficient to satisfy the purposes of Section 3553(a).

If there is a case, and numerous have been cited, for downward departure from the guidelines Green is that case.

Respectfully submitted on November 25, 2020

                                             *s/* Michael Louis Minns
                                             **Michael Louis Minns**
                                             Ashley Blair Arnett
                                             Michael Louis Minns, P.L.C.
                                             9119 S. Gessner, Suite One
                                             Houston, TX   77074
                                             Tel.: (713) 7770772

Fax: (713) 7770453
Email: mike@minnslaw.com
ashley@minnslaw.com

## CERTIFICATE OF SERVICE

On November 25, 2020 I, Ashley Blair Arnett, attorney for the Defendant John O. Green, filed this motion with the United States District Court District of the Northern District of Texas electronic filing system.   Based on my training and experience with electronic filing in the federal courts, it is my understanding that a copy of this request will be electronically served upon the parties upon its submission to the Court.

s/Ashley Blair Arnett
*Ashley Blair Arnett*
Attorney for Defendant John O. Green