# EXHIBIT B

Exhibit 3 focuses on the three components of the primary recidivism definition and illustrates the distribution of recidivating activity type.[18] The level of recidivism under each individual primary recidivism definition element is proportional across the CHCs. Supervision violations are the largest type of recidivism behavior, accounting for an average 45 percent of recidivism across the CHCs. Arrests without known conviction dispositions account for an average 33 percent of recidivism events across the CHCs. Finally, new offense re-conviction accounts for an average 22 percent of recidivism events across the CHCs. Similar proportions of behavior types across the CHCs suggest that the results from a recidivism analysis conducted on any one recidivism element alone will produce results similar to those obtained using the combined three elements of the primary recidivism definition.[19]

### 2. Criminal History Points

Exhibit 4 appears at the end of the report, but its data are displayed in the sidebar graphic to the right. The data reflect the primary recidivism definition. Offenders with 20 or more criminal history points are all grouped into the last category. As the data in Exhibit 4 illustrate, approximately 0.9 percent of offenders in the recidivism study have 20 or more criminal history points.



Criminal history points represent the purest form in which the guidelines measure recidivism risk. The CHC is not as pure in its form because the CHC is an aggregation of points into one of only six categories. Therefore, the sum of criminal history points is the primary source for evaluating the predictive ability of the current criminal history Chapter Four provisions. Not surprisingly, therefore, when predicting the primary

---

[18] Recall that the three components of the primary recidivism definition are: a re-conviction; a re-arrest with no conviction disposition information available on the post-release criminal history record; and a supervision revo-cation (during either probation or post-prison supervision).

[19] However, analysis using only one of the three primary definitions components is not recommended. Using only one element of the definition reduces the sample size of recidivating offenders, which subsequently increases the rate of error in the indicator chosen to measure the underlying risk for re-offending. Further, analysis using only one recidivism event type (re-convictions only, for example) may find that certain predictors are not statistically significant both because one vent type provides a lower base rate for recidivism and because one event type will provide a more error prone measure of the underlying risk for re-offending.